**FILED UNDER SEAL**

**ORIGINAL**

FILED

**FEE PAID**

2024 FEB 20  PM 4: 35

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: _____ **rsm**

1  Julian Brew (SBN 150615)
   jbrew@hechtpartners.com
2  **HECHT PARTNERS LLP**
3  6420 Wilshire Boulevard, 17th Floor
   Los Angeles, CA 90048
4  Telephone:  310-804-8065
5  Facsimile:  646-492-5111
6  Attorneys for Plaintiff-Relator,
   **RELATOR LLC**
7

8              **UNITED STATES DISTRICT COURT**
9             **CENTRAL DISTRICT OF CALIFORNIA**
10                     **8:24-CV-00357-DOC-KESx**

11  **UNITED STATES OF AMERICA,**          Case No.
12          Plaintiff,
13  *ex rel.* **RELATOR LLC,** a California    **COMPLAINT FOR VIOLATIONS**
14  limited liability company,            **OF FEDERAL FALSE CLAIMS**
                                          **ACT**
15          Relator,
                                          **FILED** *IN CAMERA* **UNDER SEAL**
16      v.                                **PURSUANT TO 31 U.S.C. §**
17                                        **3730(b)(2)**
18  **DAVID CHARLES DICKERSON,** an
    individual, **TIM DOWD,** an individual;  **DO NOT PLACE ON PACER**
19  and **ACCURATE BACKGROUND,**
20  **LLC,** a California Limited Liability
    Company; and DOES 1-10,             **JURY TRIAL DEMANDED**
21
22          Defendants.
23
24
25
26
27
28

_____
                    COMPLAINT

**FILED UNDER SEAL**

1  **DAVID CHARLES DICKERSON**, ("DICKERSON") an individual, **TIM**
2  **DOWD**, ("DOWD") an individual, and **ACCURATE BACKGROUND, LLC**,
3  ("ACCURATE") a California Limited Liability Company, and **DOES 1-10**:

4  **JURISDICTION & VENUE**

5  1.    This Court has subject matter jurisdiction over the Plaintiff's claims
6  brought under the FCA, 31 U.S.C. §§ 3279, et seq., pursuant to 31 U.S.C. §§ 3730
7  and 3732. This Court has supplemental jurisdiction to entertain the common law and
8  equitable causes of action under 28 U.S.C. § 1367(a).

9  2.    Plaintiff The United States of America is also located in the Central
10  District of California. This Court has personal jurisdiction over Defendants pursuant
11  to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted
12  business and are located in the Central District of California, and acts proscribed by
13  31 U.S.C. § 3729 occurred in this district.[1]

14  3.    Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and
15  under 28 U.S.C. §§ 1391(b) and 1395(a), because the Defendant's acts that form the
16  basis of this Complaint occurred in the Central District of California.

17  4.    Relator's claims and this Complaint are not based upon prior public
18  disclosures of allegations or transactions in a federal criminal, civil, or administrative
19  hearing in which the Government or its agent is a party; in a congressional,
20  Government Accountability Office, or other federal report, hearing, audit, or
21  investigation; or from the news media. To the extent that there has been a public
22  disclosure unknown to Relator, it is the "original source" within the meaning of 31
23  U.S.C. § 3730(e)(4)(B) and/or the public disclosure is a result of Relator voluntarily
24  providing this information to the United States Government prior to filing this *qui*
25  *tam* action.

26  **INTRODUCTION AND SUMMARY**

27  _____

28  [1] ACCURATE operates throughout California, and has its headquarters in Irvine, California, in the Central District of California.

**FILED UNDER SEAL**

5. In this matter the executives of the nation's largest privately held background check company misappropriated millions of dollars from the US Federal government's Paycheck Protection Program ("PPP"). Defendant is the largest privately held provider of compliant background checks, drug and health screening, and monitoring solutions. When they applied for the loan they were highly profitable and in the process of acquiring another company. Defendants absolutely did not need a financial assistance loan. In 2021 Defendant was named to *Inc. Magazine's* "5000 list", a prestigious raking of the nation's fastest growing companies, for the fifth consecutive year in a row.[2] Defendants submitted falsified loan documents to the SBA to obtain the loan, which it certainly and undoubtedly was <u>not</u> qualified for and was <u>not</u> allowed to receive. ACCURATE falsely reported to the government that its employee numbers were exactly 500, which is totally false. They under-reported their employee count. This was done to avoid disqualification. ACCURATE did not urgently need money to avoid business failure. It was financially successful and had been expanding during the Pandemic, as it demonstrated in 2020 with the launch of a major new initiative, ACCURATE's Mueller at Home application, which allowed their customers a whole new format for engaging with the company. ACCURATE exhibited no signs of economic distress around the time it applied for the loan. Some of all of these indicants would be seen coming from a company in economic distress. None were present.

6. Even if ACCURATE had some minor business decline in 2020, which they did not appear to, their own financial reserves should have easily supported their payroll. ACCURATE executives saw an opportunity to take money from the PPP program and took advantage. They lied about their economic need for help. They lied about their revenues. They lied about their employee payroll size. Defendants applied for and received a maximal $10,000,000 loan, but instead of giving it back the next

---

[2] Accurate moved up the list to No. 3,024 up from its No. 4,622 position in 2020. The average three-year growth rate for companies on the 5000 list is 543%.

**FILED UNDER SEAL**

1  year, they sought out and obtained loan forgiveness. Neither the loan nor the loan
2  forgiveness were permissible under the SBA's rules. Rather than returning the ill-
3  gotten money, ACCURATE and its executives kept the money, billing millions to
4  the US taxpayer.

5      7.    Defendants used their report company to misappropriate $10,000,000
6  from the US government by making false claims to the Small Business
7  Administration ("SBA"). Defendants falsified the number of employees, and falsified
8  economic uncertainty so grave it threatened their ability to pay their employees. They
9  also falsified the loan amount needed to respond to that falsified threat, and falsified
10  needing money from the US government as opposed to their own business associates
11  or coffers. ACCURATE and the individual defendant executives who controlled
12  ACCURATE:

13      a.    Falsified loan eligibility;
14      b.    Falsified its status as a "small business" concern as defined;
15      c.    Falsified that is not a dominant business in its field;
16      d.    Falsified number of jobs;
17      e.    Falsified the use of the loans on authorized expenses; and
18      f.    Falsified the economic necessity for the loans.

19      8.  **Falsified Figure of 500 Employees**. ACCURATE lied about being
20  a small business, defined as being under 500 employees. ACCURATE's own website
21  claims it has 1,700 employees, *more than triple* the amount falsely reported by them.
22  The difference is large. On its loan application it certified that it employed "no more
23  than the greater of 500 employees or, if applicable, the size standard in number of
24  employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's
25  industry."

26      9.  **In 2020 Defendant Acquired Career Builder Employment**
27  **Screening**. Defendants falsely certified economic uncertainty threatening operations
28  because during the same time as they applied for the PPP loan, they bought out

**FILED UNDER SEAL**

1  another company. In 2020 Defendant acquired a competitor, Career Builder
2  Employment Screening. This purchase of another company would be highly unlikely
3  if indeed ACCURATE was having economic uncertainties which would threaten
4  operations. Healthy and financially robust companies purchase their competitor
5  companies. If ACCURATE was telling the truth to the US government to get the PPP
6  loan, they would not be able to purchase Career Builder Employment Screening.
7  ACCURATE did purchase them. ACCURATE obviously lied to the US government.

8      10.    **ACCURATE Financial Success in 2020**.ACCURATE did not have
9  financial trouble in 2020, it was financially doing quite well and had been for a while.
10  *Inc. Magazine* reported that "This year, Accurate moved up the list to No. 3,024,
11  from its No. 4,622 position last year, attributing accelerated growth from strategic
12  investments and successfully scaling the business to serve more customers." The
13  magazine goes on to report that not only have the companies on the 2021 Inc. 5000
14  list been very competitive within their markets, but the 2021 list also proved
15  especially resilient and flexible given 2020's unprecedented challenges. Among the
16  5000, the average median three-year growth rate soared to 543 percent, and median
17  revenue reached $11.1 million.

18      11.    **Defendant Says Pandemic Had No Impact On Continuity of Service**
19  **or Productivity**. In an interview with Techseries Magazine, TIM DOWD boasted
20  that ACCURATE was able to quickly move its workforce home and was able to adapt
21  quickly to the Pandemic so that it did not cut back service or productivity. Productive
22  and service was not affected by the Pandemic, so it is impossible that they had
23  economic uncertainty enough to threaten operations. DOWD says: "In short order we
24  moved our entire operation to a work from home posture without any impact on
25  continuity of service or productivity impact."

26      12.**Defendant Is Dominant In Its Field, Therefore Not a Small Business**
27  Some small business concerns can still be eligible for a PPP loan even if they have
28  more than 500 employees, as long as they satisfy the existing statutory and regulatory

**FILED UNDER SEAL**

1  definition of a "small business concern" under section 3 of the Small Business Act,
2  15 U.S.C. 632. 15 U.S. Code § 632 (a) (1) generally defines small business concerns
3  as businesses which are "not dominant in its field of operation." Defendant is a highly
4  successful and large business. As the largest privately held background check
5  company in the country, it is dominant in its field of operation. These loans are not
6  meant for these type of large, successful, "dominant" companies because such
7  companies are able to withstand economic uncertainties, and should not be seeking
8  financial assistance from the US government intended for small businesses. These
9  types of dominant in their field companies, are typically larger, have a history of
10 revenue, have stored assets, have partners, relationships and access to other lenders.
11 These types of companies have the resources to draw upon to support their businesses
12 if some economic uncertainty arises.

13     The PPP is not for them. Dominant companies are not fragile. They usually
14 need no external support. PPP loans are intended for fragile companies, in financial
15 trouble, not companies who do not need any assistance.

16     13. **Alternative Size Standards Not Met Either**. The SBA's size standard
17 for businesses in their industry of Investigation Services (NAICS Code 561611) was
18 $22M[3] as of the date ACCURATE's loan was approved.[4] Relator is informed and
19 believes that ACCURATE'S annual receipts were well in excess of $22M. Among
20 other things, it is clear from ACCURATE'S stated payroll of $10,000,000 for 2.5
21 months of salaries that the annual receipts of ACCURATE were far in excess of the
22 $16.5M maximum. Specifically, ACCURATE certified that 100% of the
23 $10,000,000 loan was to be used for payroll, which under the PPP and CARES Act
24 rules equates to two and one-half (2 ½) months of salaries, which annualized is equal

25

26 [3] https://www.ecfr.gov/current/title-13/chapter-I/part-121

27 [4] The size standards themselves are expressed either in number of employees or annual
   receipts in millions of dollars, unless otherwise specified. The number of employees or
28 annual receipts indicates the maximum allowed for a concern and its affiliates to be
   considered small.

**FILED UNDER SEAL**

1   to annual salaries totaling $48,000,000. Therefore, unless ACCURATE operated at

2   $38,000,000 loss when it applied for the loan, it had annual receipts in excess of the

3   $22 million size standard applicable for NAICS Code 561611. Some independent

4   sources have reported ACCURATE's annual revenue to be as high as $354 million.

5   Therefore, ACCURATE was not and *could not* have been a small business and was

6   not eligible to apply for and receive the PPP Loan.

7        14.**No Economic Necessity**. The PPP was made to help struggling

8   businesses which were unsure about being *able* to pay their workers. The second

9   certification in the application was: "Current economic uncertainty makes this loan

10   request necessary to support the ongoing operations of the Applicant." The word

11   "necessary" is important. The SBA required that the COVID pandemic caused

12   enough economic uncertainty so that company payroll was jeopardized. That is a

13   distinct standard. It is not enough that there was *some* economic uncertainty. The

14   uncertainty must be to the level adverse enough to threaten payroll. There must be

15   sufficient economic uncertainty, such that the company's engine room and most

16   important asset, its people, were threatened with unaffordability for the business. In

17   other words, the business must be on life support. The business must have been in

18   financial trouble to the point where its most important resource, its people, were in

19   danger of being lost. That level of economic uncertainty was not present with

20   ACCURATE. The PPP was not a free excuse to raid government coffers by wealthy

21   businessmen. ACCURATE did not need the loans -- there was no "need" or

22   "economic necessity" to pay Defendant's payroll expenses.[5] ACCURATE did not

23   and cannot show any decline in revenue during the pandemic, much less a decline so

24   bad it threatened worker pay. There are no reports of dire financial news or business

25

26   ———————————

[5] ACCURATE is not a small business in dire financial straits, but rather a well-financed

27   and successful construction company. Public information shows their revenue was not

28   declining, and their own statements indicate continued growth and profits. Defendant
cannot show "economic necessity" in needing the loans to continue business operations.

**FILED UNDER SEAL**

1 decline which one would normally see from a business which could need help with
2 payroll. There were:

- No office closures;
- No large layoffs;
- No apologies to customers;
- No sale of company assets;
- No announcement of cost cutting measures;
- No debt restructuring;
- No employee strikes/organized complaints;
- No scaling back of services;
- No location reductions; or
- No loans taken from any other sources, apart from the PPP.

13 Yet Defendants falsely certified they had "economic uncertainty" so bad that
14 it threatened payroll, so they could take financial assistance from the US taxpayer.

15 15. **Loan Not Necessary From the US Government**. On their application to
16 the government Defendants made the Certification that: "Current economic
17 uncertainty makes *this* loan request necessary to support the ongoing operations of
18 the Applicant." The word "*this*" in the Certification is critical because it refers to the
19 PPP loan. It means the loan was necessary <u>from the US government</u>, as opposed to
20 loans or financial assistance from alternate sources like a private bank, business
21 partners or others. If the Defendants could have easily got financial assistance from
22 other sources, *this* loan would not be necessary.

23 In truth, if Defendants needed help, a loan or other financial assistance <u>could</u>
24 have come from other sources. Since assistance money could easily have come from
25 other sources, Defendants were lying when they Certified that assistance *needed* <u>to</u>
26 <u>come from the US government</u>. Defendants could have obtained assistance from
27 other sources. This particular loan was not necessary, so this Certification was false.

28 16.**Money Not Returned**. The loan was taken by a business which was not

**FILED UNDER SEAL**

1    allowed to take even one penny in loans, let alone millions of dollars. However, at
2    some point the Defendants could have changed course. They could have returned the
3    money. They did not. They doubled down on their misappropriation by seeking loan
4    forgiveness. The approximately $6.7M in funds should have been returned
5    immediately. This loan should never have been sought in the first place. Yet the
6    Defendants went further by obtaining total loan forgiveness, billing the US taxpayers
7    millions of dollars. *Defendants have not returned the loan proceeds to this day*.

8        17. **Further Falsification on Loan Forgiveness**. Defendants falsified further
9    documents to receive loan forgiveness. Defendants had to attest as to the use of the
10   funds and the amount used on authorized purposes. They were not because
11   Defendants could not comply with the requirements of forgiveness given their
12   business type. So, Defendants also lied on their forgiveness documents and
13   application.

14       18. **Defendant's False Statements and Fraud**. Defendants knowingly and
15   intentionally made many materially false statements to the government and bank to
16   obtain the loans.

17       19.   Plaintiff brings this action as relator on behalf of the United States to
18   recover treble damages, civil penalties, and costs under the False Claims Act
19   ("FCA"), 31 U.S.C. §§ 3729-33 Plaintiff gave notice of its intent to file and full
20   disclosure of the evidentiary basis to the Department of Justice ("DOJ").

21                       **THE PARTIES**

22       20.   Plaintiff is a California limited liability company with its principal
23   place of business in Los Angeles County, California.

24       21.   Defendant DAVID CHARLES DICKERSON, is an individual and was
25   a founder and Chief Executive Officer of ACCURATE when it applied for the PPP
26   loan. On June 1, 2020 he assumed the role of Executive Chairman of the Board of
27   Directors.

28

**FILED UNDER SEAL**

22.     Defendant TIM DOWD is an individual and was the President and Chief Operations Officers of ACCURATE. On June 1, 2020 he assumed the role of Chief Executive Offer and continued to serve on the Board of Directors.

23.     Defendant ACCURATE BACKGROUND, LLC, is a California Limited Liability Company formed in 1998 with its principal place of business located at Irvine, California.

24.     Defendant ACCURATE is the largest privately held provider of compliant background checks, drug and health screening, and monitoring solutions.

25.     The true names and capacities, whether individual, partner, associate, corporate or otherwise, of Defendant DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiff, who therefore sues said Defendant(s) by such fictitious names. Plaintiff is informed and believes and thereon alleges that each Defendant designated herein as a "DOE" is legally responsible in some manner for the events and happenings herein mentioned. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of said DOES, and add appropriate charging allegations against said DOES when their identities have been ascertained. Plaintiff is informed and believes that each of the DOE Defendants were responsible in some manner for the injuries and damages alleged herein, and/or for the wrongful acts of some or all of the Defendants.

26.     Plaintiff is further informed and believes that each of the Defendants, whether specifically named or named as a DOE, was an agent, employee, servant and/or representative of each of the remaining Defendants, and, in doing or failing to do the things alleged herein, was acting within the course and scope of said agency, employment, service and/or representation.

27.     Plaintiff is further informed and believes that each of the Defendants, whether specifically named herein or named as a DOE, approved, ratified and/or acquiesced in the acts and omissions of each of the remaining Defendants.

COMPLAINT

**FILED UNDER SEAL**

28.     Plaintiff is further informed and believes that each of the Defendants
herein, whether named as DOES or otherwise, acted in concert, agreement and
conspiracy with the other Defendants for the common purpose of engaging in a
scheme to defraud as alleged below.

**THE CARES ACT AND PAYCHECK PROTECTION PROGRAM**

29.     On March 27, 2020, the Coronavirus Aid, Relief, and Economic
Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and
provided emergency assistance and health care response for eligible individuals,
families, and businesses affected by the coronavirus pandemic. SBA received
funding and authority through the Act to modify existing loan programs and establish
a new loan program to assist small businesses nationwide adversely impacted by the
COVID-19 emergency.

30.     The CARES Act authorized loans to eligible small businesses struggling
to pay employees and stay in business as a result of the devastating effect of the
COVID-19 pandemic and resulting restrictions.

31.     Section 1102 of the CARES Act temporarily permitted the SBA to
guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck
Protection Program" ("PPP").

32.     On April 24, 2020, the Paycheck Protection Program and Health Care
Enhancement Act (Pub. L. 116-139) was enacted to provide additional funding and
authority for the PPP. On June 5, 2020, the PPP Flexibility Act of 2020 (Flexibility
Act) (Pub. L. 116-142) was enacted, changing key provisions of the PPP, including
provisions relating to the maturity of PPP loans, the deferral of PPP loan payments,
and the forgiveness of PPP loans.

33.     Under the PPP, in 2020, eligible businesses could obtain one SBA
guaranteed PPP loan. Businesses were required to spend all loan proceeds only for
employee compensation, rent or mortgage, and certain other specified expenses.

**FILED UNDER SEAL**

1    Depending on their use of the loan proceeds as certified, they could qualify for loan
2    forgiveness, up to the full amount of the loan.

3        34.    The SBA delegated authority to third-party lenders to underwrite and
4    approve the PPP loans. In order to obtain a PPP loan, whether a "First Draw" or
5    "Second Draw" loan, an eligible business (through its authorized representative) had
6    to sign and submit a PPP loan application (SBA Form 2483) online through the
7    lender's platform. The PPP loan application (SBA Form 2483) required the business
8    (through its representative) to acknowledge the PPP program rules and make certain
9    certifications in order to be eligible to obtain the PPP loan, including certifying that
10   their certifications were true.

11       35.    Once the Borrower submitted its PPP loan application (SBA Form 2483)
12   to a Lender, the participating lender processed the PPP loan application. If a PPP loan
13   application (SBA Form 2483) was approved by the lender, it funded the PPP loan
14   with its own funds, which were 100% guaranteed by the SBA.

15       36.    After the Lender processed and approved a borrower's PPP loan
16   application (Form 2483), but prior to the closing of the PPP loan, the Lender
17   submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan
18   Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan. For a
19   PPP loan to be approved, the Lender was required to Answer Yes to the following
20   questions in the Lender's Application - Paycheck Protection Program
21   Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General
22   Eligibility to receive a PPP Loan:

| | |
|---|---|
| • The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic | ☐ Yes  ☐ No |

**FILED UNDER SEAL**

| uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures; and (4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | | |
|---|---|---|

SBA Form 2484 (emphasis added). Therefore, if a PPP borrower lied on its PPP loan application (SBA Form 2483), the PPP borrower's false certification caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained the PPP borrower's False Statement.

37.    SBA Form 2483 includes the following certification, among others: "I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them" (the "Understanding Certification").

38.    SBA Form 2483 also includes the following certification, among others: "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (the "Eligibility Certification").

39.    SBA Form 2483 also includes the following certification, among others "All SBA loan proceeds will be used only for business-related purposes as specified

**FILED UNDER SEAL**

1    in the loan application and consistent with the Paycheck Protection Program Rule"
2    (the "Use of Proceeds Certification").

3        40.    SBA Form 2483 also includes the following certification, among others:
4    "Current economic uncertainty makes this loan request necessary to support the
5    ongoing operations of the Applicant" (the "Economic Necessity Certification").

6        41.    SBA Form 2483 also includes the following certification, among others:
7    "The funds will be used to retain workers and maintain payroll or make mortgage
8    interest payments, lease payments, and utility payments, as specified under the
9    Paycheck Protection Program Rule; I understand that if the funds are knowingly used
10   for unauthorized purposes, the federal government may hold me legally liable, such
11   as for charges of fraud" (the "Worker Retention and Payroll Certification").

12       42.    SBA Form 2483 also includes the following certification, among others:
13   "During the period beginning on February 15, 2020 and ending on December 31,
14   2020, the Applicant has not and will not receive another loan under the Paycheck
15   Protection Program." (the "Single Loan Certification").

16       43.    SBA Form 2483 also includes the following certification, among others:
17   "I further certify that the information provided in this application and the information
18   provided in all supporting documents and forms is true and accurate in all material
19   respects. I understand that knowingly making a false statement to obtain a guaranteed
20   loan from SBA is punishable under the law, including under 18 USC 1001 and 3571
21   by imprisonment of not more than five years and/or a fine of up to $250,000; under
22   15 USC 645 by imprisonment of not more than two years and/or a fine of not more
23   than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014
24   by imprisonment of not more than thirty years and/or a fine of not more than
25   $1,000,000" (the "No False Statements Certification").

26       44.    After the borrower submitted a PPP loan application, it was processed
27   by the participating lender. If the PPP loan application was approved, the
28   participating lender funded the loan using its own monies, which were then

**FILED UNDER SEAL**

1   guaranteed by the SBA. Generally, in the event the borrower defaulted on a PPP loan,
2   the SBA would purchase the borrower's debt from the lender and be responsible for
3   its repayment.

4       45.     Under applicable SBA rules and guidance, recipients of PPP loans could
5   apply to have principal and interest on the PPP loan fully forgiven, meaning that the
6   borrower would owe nothing and would have no obligation to repay the PPP loan.
7   To obtain full forgiveness of the PPP loan, borrowers had to attest that they had "not
8   reduced the number of employees or the average paid hours of [their] employees"
9   during the loan period, that the loan proceeds had been spent on payroll costs and
10  other permitted expenses and that at least 60% of the loan proceeds had been spent
11  on payroll costs (hereafter the "Loan Forgiveness Certification").

12      46.     Loans could only be used for certain permitted expenses, such as to pay
13  employees' salaries, employee benefits, mortgage interest, rent, utilities or worker
14  protection costs related to COVID19.

15      47.     More specifically, the loan forgiveness application (SBA Form 3508),
16  revised as of July 30, 2021, included the following certifications, among others:

17          (1)     The dollar amount for which forgiveness is requested:
18                  ▪ was used to pay costs that are eligible for forgiveness (payroll
19                    costs to retain employees; business mortgage interest payments;
20                    business rent or lease payments; or business utility payments);
21                  ▪ includes all applicable reductions due to decreases in the number
22                    of full-time equivalent employees and salary/hourly wage
23                    reductions;
24                  ▪ includes payroll costs equal to at least 60% of the forgiveness
25                    amount;
26                  ▪ if a 24-week Covered Period applies, does not exceed 2.5 months'
27                    worth of 2019 compensation for any owner-employee or self-
28

15

COMPLAINT

**FILED UNDER SEAL**

employed individual/general partner, capped at $20,833 per individual; and

- if the Borrower has elected an 8-week Covered Period, does not exceed 8 weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual.

(2)   I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

(3)   The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

(4)   The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application.

48.    On April 23, 2020 in FAQs No. 31, the SBA reiterated that the economic necessity certification must be made in good faith and that publicly traded companies are not likely to be able to make that certification in good faith, stating "it is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith..."

**DEFENDANTS' FRAUD**

49.    During round 1 of the PPP, Defendant ACCURATE applied for a PPP loan for $10,000,000. It was approved on April 11, 2020, by the SBA for the full amount, which was disbursed. The loan was facilitated by Zions Bank. Defendant received 100% of the approved amount. On its application for this loan, Defendant stated that it had 500 employees for which it needed the loan. This loan was forgiven on August 30, 2021.

**FILED UNDER SEAL**

1       50.    Defendants were not a "small-business concern" and did not satisfy any
2  of the alternate tests to make it eligible to receive a PPP loan. Both executive
3  Defendants, are sophisticated, experienced businessmen. They must have known or
4  should have known about the restrictions. Even if they did not know of all the
5  restrictions, if they understood some of the rules, they would have quickly realized
6  these loans are not permissible. The legal and financial experts they had hired over
7  the years would have known this. The Defendants intentionally broke these clear
8  rules knowing what they were doing. They should have had the information necessary
9  for them to realize the PPP was restricted and their companies were ineligible.

10      51.    Defendants would have had to manage and investigate the many
11  regulations in administering and growing their company. They would have quickly
12  discovered that the PPP assistance to them was not permitted, especially given the
13  amounts involved.

14      52.    The information and especially the numbers provided by Defendants
15  strongly evidence a scheme to defraud. This includes the number of employees
16  reported and the amount of the loan requested. The Defendants knew when they
17  claimed that ACCURATE had 500 employees that such a statement was false.
18  ACCURATE did not have 500 employees, they had substantially more than 500
19  employees and if the true and correct number of their employees was reported by
20  Defendants, ACCURATE would not be eligible to obtain a PPP loan, because it
21  would not be considered a small business, had more than 500 employees, and could
22  not qualify as a small business under the size standard principal.

23      53.    In addition to applying any applicable business type ineligibility rules,
24  all borrowers should carefully review the required Economic Certainty certification
25  on the Borrower Application Form stating that "[c]urrent economic uncertainty
26  makes this loan request necessary to support the ongoing operations of the
27  Applicant."

28

COMPLAINT

**FILED UNDER SEAL**

1   54.   ACCURATE and its owners abused the PPP program. From
2   misrepresenting a serious economic need for the loan, to willfully ignoring
3   ineligibility based on size and revenue, to maximizing the amount of the loan and
4   then obtaining loan forgiveness, the Defendants orchestrated an intentional scheme
5   to simply skim money from the program.

6   55.   Discovery will reveal what exactly the $10,000,000 million in US
7   taxpayer dollars was spent on, but what is obvious is that Defendants *did not need*
8   any of that money from the US government. ACCURATE is and was highly
9   profitable during the pandemic. Defendants did not suffer any business loss and
10   certainly had the money to pay their own worker's wages given their extensive
11   history of profit and list of assets.

12   56.   Defendants signed the loan applications, thereby endorsing the
13   Understanding Certification, which means that they agreed that they understood the
14   rules and guidelines of the PPP, including, without limitation the rules regarding use
15   of proceeds and the certifications made.

16   57.   The proceeds of the PPP Loans were not and could not have been used
17   only for authorized purposes consistent with the PPP Rules, because, among other
18   things, the Defendants were obviously not allowed to apply for PPP loans because of
19   their ready access to money, and their company size (which exceeds 500 employees).
20   Therefore, when Defendants made the Use of Proceeds Certification, the certification
21   was false.

22   58.   The proceeds of the PPP loans were not necessary to support the
23   ongoing operations of ACCURATE. The company was nowhere near a financial
24   precipice. Far from it. The company enjoyed record high business achievements since
25   2020 until today. This company had considerable financial resources to pay its own
26   workers, assuming that is where the money was spent rather than into the pocket of
27   the CEO and its executives. Therefore, when Defendants made the Economic
28   Necessity Certification, the certification was false.

**FILED UNDER SEAL**

59.     The PPP loan money was only allowed to be used on *authorized* expenses. The proceeds of the PPP Loan were not permitted to be used to pay for the very much affordable business costs for this large publicly traded business with access to billions of dollars in public funding, therefore when Defendant made the Worker Retention and Payroll Certification, the certification was false.

60.     By virtue of the above false statements, when Defendants made the No False Statements Certification, that certification was false.

61.     The Defendants actively pursued and obtained loan forgiveness. Because ACCURATE is prohibited from obtaining any PPP loans, its representation on its forgiveness application that it spent 100% of the loan proceeds on eligible expenses was not truthful. The SBA would not have forgiven the loans if they knew Defendants' certifications described above were false.  They also would not have forgiven the loans if they knew the proceeds had been used to increase profits instead of paying their employees.

62.     As a result of the forgiveness, Defendants have not repaid the loan and have kept the proceeds, and the loan has been repaid with money from taxpayers, including the small businesses and owners who were supposed to receive the PPP funds instead of repaying a profitable corporation's loan that it never should have received, let alone had forgiven.

## THE FALSE CLAIMS ACT

63.     The False Claims Act prohibits fraudulent conduct in connection with federal programs, including the knowing submission of false claims for payment to the government. See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability may attach if the omission renders those representations misleading. 41. 31 U.S.C. § 3729(a)(1)(A) and (B) of the FCA provide that:

        (1) . . . any person who—

        (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

19

**FILED UNDER SEAL**

1          (B) knowingly makes, uses, or causes to be made or used, a false

2  record or statement material to a false or fraudulent claim,

3         . . .

4          (G) knowingly makes, uses, or causes to be made or used, a false

5  record or statement material to an obligation to pay or transmit money or property to

6  the Government, or knowingly conceals or knowingly and improperly avoids or

7  decreases an obligation to pay or transmit money or property to the Government, is

8  liable to the United States Government . . .

9        31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

10       42. The scope of a false or fraudulent claim is to be broadly construed.

11  As used in the FCA, a "claim"

12         (A) means any request or demand, whether under a contract or

13  otherwise, for money or property and whether or not the United States has title to the

14  money or property, that—

15         (i) is presented to an officer, employee, or agent of the United States;

16  or

17         (ii) is made to a contractor, grantee, or other recipient, if the money or

18  property is to be spent or used on the Government's behalf or to advance a

19  Government program or interest, and if the United States Government—

20         (I) provides or has provided any portion of the money or property

21  requested or demanded; or

22         (II) will reimburse such contractor, grantee, or other recipient for any

23  portion of the money or property which is requested or demanded; . . .

24        31 U.S.C. § 3729(b)(2) (2020).

25     64.    A person who violates the False Claims Act during the time period at

26  issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages

27  which the United States Government sustains because of the act of that person." 31

28

**COMPLAINT**

**FILED UNDER SEAL**

1  U.S.C. § 3729(a). See 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part

2  85, Civil Monetary Penalties Inflation Adjustments for 2022 published at:

3  https://www.govinfo.gov/content/pkg/FR-2022-05-09/COMMERCE/2022-

4  09928.COMMERCE.

5                         **FIRST CAUSE OF ACTION**

6        **FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729(a)(1)(A-B))**

7      65.   Plaintiff alleges and incorporates by reference each and every allegation

8  contained in all prior paragraphs of this complaint.

9      66.   This is a claim for treble damages and penalties under the False Claims

10  Act, 31 U.S.C. § 3729, et seq., as amended.

11      67.   By virtue of the acts described above, Defendants knowingly presented,

12  or caused to be presented, to an officer or employee of the United States government,

13  false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C.

14  § 3729(a)(l)(A). Specifically, each of Defendants' Economic Necessity, No False

15  Statements, Eligibility, Use of Proceeds, Understanding, Worker Retention and

16  Payroll Certifications described above all were knowingly false, and relied upon by

17  lenders and the SBA in approving the PPP Loans.  Their request for forgiveness

18  contained a further misrepresentation that the loans had been used only for authorized

19  purposes.

20      68.   By virtue of the acts described above, Defendants knowingly made or

21  used, or caused to be made or used, false or fraudulent records or statements material

22  to false or fraudulent claims for payment by the Government.

23      69.   The Government and its agents and contractors relied on those false

24  statements in approving and making the loans and subsequently forgiving them,

25  leaving the burden of repayment on taxpayers.

26      70.   Because of the Defendants' acts, the United States sustained damages in

27  an amount to be determined at trial and, therefore, is entitled to treble damages under

28  the FCA, plus civil penalties of not less than $12,537.00 and not more than

**FILED UNDER SEAL**

1   $25,076.00 for each and every violation arising from Defendants' unlawful conduct
2   alleged herein, and attorneys' fees in an amount to be proven.

3                                   **CONCLUSION**

4        71.    The Defendants abused the PPP. They lied to the US government and
5   dishonestly took from US taxpayer's coffers. They took $10,000,000 from the PPP,
6   not a penny of which was necessary. The PPP was meant for businesses struggling
7   to afford payroll. Now that program is dry, and many are out of work. The American
8   people have a right to reconciliation.

9                                **PRAYER FOR RELIEF**

10       WHEREFORE, qui tam Plaintiff/Relator prays for judgment against
11  Defendants, as follows:

12       1. That this Court enter judgment against each Defendant in an amount equal
13  to three times the damages that the United States has sustained because of
14  Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than
15  $25,076.00 for each and every false claim as are required by law, together with all
16  such further relief as may be just and proper.

17       2. Such other relief as this Court may deem just and proper, together with
18  interest and costs of this action.

19       3. Reasonable attorney fees, litigation expenses, and costs of suit.

20                                  **JURY DEMAND**

21       Plaintiff demands a trial by jury on all issues so triable.

22

23  Dated: February 20, 2024              HECHT PARTNERS LLP

24

25

26                              By:  _____

27                                   JULIAN BREW
                                     Attorneys for Plaintiff-Relator
28                                   RELATOR LLC

                                          22